IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

MAGDALENE CHAPMAN,

    Plaintiff,

v.

SAVANNAH RIVER NUCLEAR
SOLUTIONS, LLC,

    Defendant.

Case No. 1:25-cv-11770-SAL-SVH

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff, through her counsel, alleges as follows:

## I. NATURE OF THIS ACTION

1. This is an employment discrimination and retaliation action to redress the discriminatory and retaliatory involuntary removal of the female Plaintiff, as well as discriminatory and retaliatory actions against the Plaintiff because of her gender in violation of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e-2(a)(1), and because of her opposing and complaining about gender discrimination or prohibited practices pursuant to the anti-retaliation provisions of Title VII, 42 U.S.C. § 2000e-3(a).

COMPLAINT- 1

2. Plaintiff, formerly a Manager with Savannah River Nuclear Solutions, LLC (SRNS), a contractor for the Department of Energy, alleges herein that she was discriminated against and subjected to a hostile work environment, denied a promotion, had her responsibilities systematically removed, and was ultimately constructively discharged based on gender discrimination and retaliation for reporting harassment, ethical concerns, waste, fraud and/or abuse. The Defendant, through its agents and employees, created and tolerated a work environment that was hostile, discriminatory, and retaliatory, in violation of Title VII.

3. Plaintiff seeks reinstatement to her position, back pay and benefits, and compensatory damages, including an award for emotional distress, together with an award of reasonable costs and attorneys fees. If reinstatement is not found to be the appropriate remedy, then Plaintiff should be awarded front pay in lieu of reinstatement.

## II. **PARTIES**

4. Plaintiff, Magdalene Chapman, is an adult individual and employee of Savannah River Nuclear Solutions, LLC (SRNS), residing in Aiken, South Carolina. Plaintiff is a citizen of the United States and a resident of the state of South Carolina.

COMPLAINT- 2

5. During the relevant time period, Plaintiff held the position of Manager, Records Integration and Mission Support, within the Plutonium Programs at SRNS until her involuntary removal from the position.

6. Defendant Savannah River Nuclear Solutions, LLC (SRNS) is a Fluor-led company (with Newport News Nuclear and Honeywell) and is responsible for the management and operations of the Department of Energy's Savannah River Site located near Aiken, South Carolina. The Savannah River Site is a key Department of Energy (DOE) industrial complex responsible for national security and nonproliferation missions, disposition of nuclear materials, waste management, and environmental cleanup and stewardship.

### III.    JURISDICTION, VENUE, AND EXHAUSTION

7. Jurisdiction lies in this Court pursuant to 28 U.S.C. § 1331 on the basis that the claims for relief in this complaint present substantial federal questions. Jurisdiction is also conferred by 42 U.S.C. § 2000e-5(f)(3).

8. Venue lies in this United States District Court under 28 U.S.C. § 1991(b) and (c) by virtue of the fact that the Defendant is regularly engaged in business in this judicial district, the Defendant has offices located herein, and the conduct complained of herein occurred and/or resulted in injury to the plaintiff in this judicial district.

COMPLAINT- 3

9. Plaintiff has exhausted all administrative procedures required by law on all of the claims for relief pleaded herein. As to the discriminatory and retaliatory actions against the Plaintiff based on sex prior to her removal, she filed a complaint of discrimination and retaliation and was issued her right to sue letter June 3, 2025.

## IV.  GENERAL FACTS

10. Plaintiff began work at the Savannah River Site in 2007.

11. In 2024, Plaintiff worked for the Plutonium Programs- Records Integration and Mission Support for Savannah River Nuclear Solutions LLC. Until January of 2025, her supervisor was Matthew Biasny, Director Business Services for Plutonium Programs. Biasny reported to Staci Peters, Vice President, Business Services. Peters reported to Senior Vice President Sean Alford, who reported to President Dennis Carr.

12. Plaintiff was a dedicated and high-performing employee at SRNS for many years. Throughout her employment, she consistently received positive performance reviews, promotions, and recognition for her contributions to the company's mission.

COMPLAINT- 4

## V. FACTS REGARDING PROTECTED ACTIVITY

13. On January 31, 2024, Plaintiff participated in a Legal and HR investigation regarding wrongdoing by the VP of Plutonium Programs and his assistant Vikki Maynard, including mistreatment of female staff. Plaintiff shared the following concerns with Legal and HR: (1) the VP had a very dated approach to female employees, viewing them as all "admins" as opposed to managers and leaders; (2) Maynard called Chapman a "bitch" to her colleague and made other inappropriate and derogatory comments; (3) Maynard targeted female employees like Chapman with innuendo, rumor and false gossip about inappropriate relationships with male colleagues; (4) Maynard tried to undermine Chapman by ignoring her emails, refusing to complete work that impacted Chapman, and limit her access to the VPs.

14. On March 18, 2024, Plaintiff contacted Legal's Andrea Reagan and HR's Francine Burroughs again to report progressively negative trending in the culture of the organization, including ongoing harassment and inappropriate comments. As part of her report, Plaintiff shared ethical concerns regarding the VP pressuring Chapman to hire an unqualified candidate for his personal reasons that he liked and socialized with the individual. Chapman reported the VP was disregarding merit and the best interests of the company and objected to this waste,

COMPLAINT- 5

fraud and abuse. Meanwhile, Maynard continued to make or imply harassing and false gender-based comments about Chapman having inappropriate relationships with male colleagues.

15.   On March 19, 2024, Chapman provided additional information to HR and Legal in support of her reporting, including that her female colleague was being inappropriately excluded from correspondence and meetings.

16.   On June 10, 2024, Chapman reported continued harassment by Maynard to Regan and Burroughs. Maynard spread gender-based rumors about Chapman including implying and/or stating Chapman was having an inappropriate relationship with a male coworker and stating said coworker was in Chapman's office when he should not be. Maynard told co-workers that this was "not a good look" for Chapman and reported that another VP had noticed. This type of rumor-spreading about inappropriate relationships disproportionately harms women in the workplace.

17.   In August 2024, Plaintiff escalated all of these above referenced concerns to VP Business Services Staci Peters. Peters did not act to remedy the retaliation.

18.   On December 9, 2024, Plaintiff complained to her supervisor Biasny that she was being retaliated against, mistreated, and disrespected due to her

COMPLAINT- 6

participation in the above investigation. Biasny refused to respond and left the meeting.

19. On December 10, 2024, Plaintiff escalated her concerns again, regarding discrimination and retaliation to Staci Peters, without resolution.

## VI. FACTS REGARDING ADVERSE ACTIONS

20. Plaintiff experienced the following retaliatory actions, which were causally connected to her protected activities. The adverse actions taken against Plaintiff exhibit a pattern of retaliation for protected disclosures and exercising her legal rights. The removal of Plaintiff is the most recent incident in a series of actions taken against her, but the adverse actions against her were escalating and included:

21. The ongoing failure to abate a hostile work environment against her after she reported wrongdoing.

22. HR Burroughs forwarded Plaintiff's June 2024 confidential concern email to VP Darlene Murdoch. After VP Murdoch learned Plaintiff had reported her discrimination concerns to Legal, Murdoch called Plaintiff into her office and berated Plaintiff for contacting Legal. Maynard was sitting right outside Murdoch's office during the berating. When Burroughs learned Chapman had

COMPLAINT- 7

been berated as a result of her discrimination reports, rather than take any action against Murdoch, Burroughs advised Plaintiff to "find a new job".

23. In July 2024, Plaintiff applied for a Business Manager promotion, but Biasiny told Plaintiff she would not get the Business Manager job "because of the issues with Darlene", directly linking her protected activity to a denial of promotion.

24. After her protected reports described above, Defendant removed her from distribution lists; removed her direct reports; reassigned key duties away from Plaintiff; reassigned duties without communication; instructed her colleagues to not communicate with Plaintiff; and ignored Plaintiff's requests for meetings;

25. On August 13, 2024, Defendant packed and moved Plaintiff's office without talking to her;

26. On December 9, 2024, Defendant gave Plaintiff negative comments in her performance appraisal that were untrue or unmerited. Defendant also used gender laden language telling Plaintiff to be kind.

27. On December 12, 2024, Matthew Biasiny began contacting Plaintiff's direct reports and telling them that they would no longer be working for Plaintiff. Plaintiff was excluded from these meetings. Throughout this time, Defendant continued to take away duties, employees, communications and input until such

COMPLAINT- 8

time as they told Plaintiff that she would be involuntarily moved to a less desirable position. The environment became so hostile and intolerable that a reasonable employee would have felt compelled to resign. Plaintiff worked to try to find a transfer that would be better for her than what Defendant was demanding.

28. On January 21, 2025, Plaintiff was moved to a less desirable position, with less opportunity for promotion and advancement within the company, thereby destroying her career path and advancement with the Defendant.

29. In March 2025, Plaintiff received a lower merit raise, less than it had been in years past prior to her protected reports.

## VII.    CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION: VIOLATIONS OF TITLE VII

30. Plaintiff incorporates all of the foregoing allegations herein.

31. The disclosures set forth above evidenced EEO oppositional protected activity.

32. Plaintiff's managers and the Defendant had knowledge of these disclosures.

33. Consideration of Plaintiff's disclosures was a contributing factor in the decision to remove her from her employment.

COMPLAINT- 9

## COUNT 1: DISCRIMINATION BASED ON SEX

34. Plaintiff specifically alleges that (a) she is a woman and is a member of a class protected by Title VII; (b) she was qualified for the position she held and performing her job in a satisfactory manner; (c) she was terminated from that position under circumstances giving rise to an inference of discrimination.

35. Plaintiff suffered the above referenced termination from her employment, emotional distress and economic damages because she is a woman, and the Defendant's adverse and disadvantageous actions were taken against her in violation of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e-2(a)(1).

## COUNT 2. RETALIATION FOR OPPOSING DISCRIMINATION

36. Plaintiff (1) engaged in a protected activity by opposing what she reasonably believed to be discrimination based on sex, which is an unlawful employment practice under Title VII; (2) suffered the adverse employment decisions set forth above, including a hostile work environment and involuntary removal; and (3) there was a causal link between her protected activity and the termination.

COMPLAINT- 10

37. The Defendant retaliated against the Plaintiff for opposing and complaining about sex discrimination in violation of the anti-retaliation provisions of Title VII, 42 U.S.C. § 2000e-3(a).

## VIII. RELIEF REQUESTED

38. Based on the foregoing, Plaintiff requests the following relief:

A. Under all claims for relief, the Plaintiff should be reinstated to her former position with back pay, pay raises, seniority privileges, and all other benefits, together with the monetary value of all lost benefits, and upon such reinstatement, the court should enjoin the Defendant from engaging in such unlawful employment practices, and order such other affirmative action as may be appropriate;

B. Under all claims for relief, if Plaintiff is not reinstated, then Plaintiff should be awarded back pay or wages lost and benefits, and for such legal or equitable relief as may be appropriate;

C. Under all claims, if Plaintiff is not reinstated, then Plaintiff should be awarded monetary damages for front pay and benefits, including retirement benefits and health insurance, reduced to present value, for a term of years to be determined at trial;

D. Under all claims, Plaintiff should be awarded compensatory damages of not less than $300,000, the exact amount to be determined at trial;

COMPLAINT- 11

E. Under all claims, Plaintiff should be awarded interest on back pay and lost wages, and such other equitable and affirmative relief as may be appropriate; and

F. Plaintiff should be awarded her reasonable attorney's fees and litigation expenses, including expert fees, be paid by the Defendant pursuant to 42 U.S.C. § 2000e-5(k) and expert witness fees.

G. Punitive damages for Defendant's malicious and reckless conduct and the actions of its agents and employees, as allowed by law.

H. Such other and further relief as the Court deems just and equitable.

Respectfully filed this 29th day of August:

_____
Magdalene Chapman

291 Switchgrass Run
Aiken, SC 29803

Filed via hand delivery:

Matthew J. Perry, Jr. Courthouse
901 Richland Street
Columbia, South Carolina 29201
Telephone: 803-765-5816
Fax: 803-765-5960

COMPLAINT- 12

COMPLAINT- 13